UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEARY C. SIMS, Sr. and CLARK BAILEY,
for themselves and others similarly-situated, and
UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION,
AFL-CIO-CLC,

                                                            Case No. 1:10-cv-10743
        Plaintiffs,                                         Class Action

v.                                                          Honorable Thomas L. Ludington

PFIZER, INC. and
WARNER-LAMBERT COMPANY, LLC

        Defendants.
_____/

**FINAL ORDER AND JUDGMENT
APPROVING CLASS ACTION SETTLEMENT**

    This matter is before the Court pursuant to Fed. R. Civ. P. 23. It involves **(1)** plaintiffs

and class representatives Keary C. Sims, Sr. and Clark Bailey; **(2)** plaintiff USW; and **(3)**

defendants Pfizer and Warner-Lambert. Plaintiffs seek approval of the parties' settlement and

Settlement Agreement to resolve this class action.

    The Court, having held a Rule 23(e)(2) fairness hearing, and having considered the

record and the presentations of the parties, and the one objection filed that was subsequently

withdrawn, is satisfied that Rule 23 requirements are met, as detailed below, and hereby

**APPROVES** the settlement and Settlement Agreement.

    The Court preliminarily approved the Settlement Agreement on November 13, 2015, and

approved the notice to class members which described the settlement, set the objection deadline,

and scheduled the fairness hearing. ECF Nos. 52 & 53. The notice was timely mailed to class

members as directed by the Court. The Court conducted the fairness hearing on February 22, 2016. Based on the hearing, the record, and the submissions and presentations to the Court, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

**The Parties and the Class.**

     **A.**    The individual plaintiffs and class representatives are Keary C. Sims, Sr. and Clark Bailey. Both are former employees of defendant Warner-Lambert. They worked at the Rochester, Michigan pharmaceutical manufacturing facility owned by Warner-Lambert until February 27, 1998, when the facility was sold. Both are former officers of the local union representing the collective bargaining unit at the Rochester facility.

     **B.**    The union plaintiff is United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC (USW), which is the successor to the Paper, Allied-Industrial, Chemical and Energy Workers International Union (PACE), which is the successor to the Oil, Chemical & Atomic Workers International Union (OCAW) and OCAW Local 7-176, which represented the collective bargaining unit at the Warner-Lambert facility and were the union-parties to the collective bargaining agreement signed on February 27, 1998 (the **"1998 CBA"**) central to this action. Generally, the unions are referred to collectively as **"USW."**

     **C.**    Defendant Warner-Lambert Company, LLC, is the employer-party to the 1998 CBA. Warner-Lambert is the employer-successor to Parke-Davis and Company, which employed the union-represented workers at the pharmaceutical manufacturing facility in Detroit, Michigan, before it moved to Rochester, Michigan. Warner-Lambert was acquired by defendant Pfizer, Inc. in 2000. Pfizer is the sponsor of the ERISA-regulated retiree healthcare plan in which

the "individual plaintiffs and persons similarly-situated, and their eligible spouses and other family members" participate.

    **D.**    The 1998 CBA provides that employees whose age and years of credited service totaled at least 65 at the time of the sale would be "eligible for retiree health insurance benefits at levels which are substantially similar and substantially equivalent to the current levels of benefits" for the lifetime of the retiree as long as "the Company provides health insurance benefits to any retirees in the United States." The 1998 CBA also provides that employees who retired before the sale are entitled to health insurance for the same duration.

    **E.**    As discussed in more detail ahead, the parties seek approval of their settlement and Settlement Agreement, ECF No. R51-2, resolving this class action. Pursuant to the Settlement Agreement, plaintiffs Sims and Bailey seek appointment as Rule 23(a)(4) class representatives; seek the appointment of plaintiffs' counsel Stuart M. Israel and Legghio & Israel, P.C. as Rule 23(g) class counsel; and seek final certification of the class defined in the Settlement Agreement. That class is:

> All **(1)** former Parke-Davis and Warner-Lambert employees who meet the Rule of 65 criteria defined in Section 3 of the 1998 Settlement Agreement between (A) the Parke-Davis Division of Warner-Lambert Company, (B) Oil, Chemical & Atomic Workers International Union (OCAW), and OCAW Local 7-176 (the predecessors to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC), including those currently eligible for retirement healthcare and those who will later become eligible for retirement healthcare under the eligibility standards set out in Section 3 of the 1998 Settlement Agreement; **(2)** former Parke-Davis and Warner-Lambert employees who are entitled to retirement healthcare under Section 1 of the 1998 Settlement Agreement and/or under collective bargaining agreements in force before the 1998 Settlement Agreement; and **(3)** spouses and other dependents of the former employees described in (1) and (2).

As discussed below, the Court finds that the individual plaintiffs and plaintiffs' counsel Israel and his law firm satisfy Rule 23(a)(4) and (g) and fairly and adequately represent the interests of the class, and appoints them, respectively, as class representatives and class counsel.

Further, as discussed below, the Court finds that this action satisfies Rule 23(a)(1)-(4) and (b)(1)(A) prerequisites, and hereby certifies the settlement class and this class action.

**The Claims and Defenses.**

F.　　The individual plaintiffs filed this lawsuit on behalf of themselves and the class under Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. §185, and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001 *et seq*. USW sues under LMRA Section 301.

G.　　This lawsuit challenged Pfizer's January 1, 2010 replacement of the healthcare plan provided to class members through Blue Cross/Blue Shield of Michigan ("BC/BSM") with a different healthcare plan administered by United Healthcare ("UHC"). Plaintiffs claim that this violated the "substantially similar and substantially equivalent" standards governing class members' healthcare. Plaintiffs claim the changes breached CBA promises and violated ERISA.

H.　　Defendants claim that the UHC plan satisfied the "substantially similar and substantially equivalent" standards and that there was no CBA breach or violation of ERISA.

**The Litigation, Settlement Negotiations, and Mediation.**

I.　　The parties engaged in discovery and exchanged information, data, and expert analyses, and presented one another with their differing CBA interpretations and legal analysis. In addition, the parties engaged in settlement negotiations and, later, mediation facilitated by a private mediator. The parties met in-person on multiple occasions, had numerous telephone conferences, and exchanged proposals and counterproposals over a protracted period in an effort to find a resolution of their differences. The parties regularly reported on their efforts to the Court.

**J.**     Ultimately, the negotiation and mediation processes produced a mutually-acceptable settlement which is embodied in the parties' Settlement Agreement. (R51-2). That settlement and the Settlement Agreement are before the Court.

**The Settlement Terms.**

**K.**     The Settlement Agreement provides for resolution of the litigation. It provides for substantial restoration of the 1998 healthcare plan, subject to agreed-upon modifications. Under the modified plan—called the "2014 Plan"—medical coverage is administered at the start by Blue Cross/Blue Shield of New Jersey, which has a broader network than UHC. The principal modification is that the 2014 Plan replaces $3 co-pays for prescription drugs with no-cost prescriptions for Pfizer drugs (those manufactured by Pfizer, Wyeth, King, Greenstone, or any other Pfizer affiliate), $15 per-prescription co-pays for 30-day supplies of non-Pfizer drugs, and $30 per-prescription co-pays for 90-day supplies of non-Pfizer maintenance drugs. The 2014 Plan's medical coverage substantially duplicates the company-paid medical coverage under the 1998 BC/BSM plan. The 2014 Plan Summary is an attachment to the Class Notice. ECF No. 51-4. Pfizer implemented the 2014 Plan on January 1, 2014, so that class members have had the benefit of that plan for the last two years. At the request of, and with the consent of plaintiffs and plaintiffs' counsel, Pfizer modified the 2014 Plan as initially implemented to clarify certain "x-rays and tests" coverage. Under the proposed settlement, any future modifications to the 2014 Plan are subject to the procedures set out in the Settlement Agreement.

**L.**     The Settlement Agreement also provides for Pfizer's payment of $750,000 to settle the class members' monetary claims made in the lawsuit. This amount is to be used to fully reimburse class members for premiums paid in 2010 they would not have had to pay under the pre-2010 plan. Those premiums were eliminated after 2010. It is anticipated that premium reimbursements will require about $201,000. The remainder of the settlement amount is to be

distributed to class member family units to partially reimburse medical and prescription expenses incurred by class members under the UHC plan that they would not have had to incur under the BC/BSM plan. These partial reimbursements are to be allocated to class member family units based on Pfizer medical utilization data covering 2010 through 2013, based on data availability, medical privacy requirements, and administrative feasibility, as set out in the parties' Plan of Allocation ("POA"). ECF No. 51-6. Plaintiffs believe this allocation provides a practical "rough justice" measure to reimburse class members for a portion of the higher medical and prescription expenses incurred under the UHC plan, in addition to full reimbursement of the higher 2010 premium payments.

**M.**      The settlement and Settlement Agreement also require Pfizer to pay class counsel's fees, costs, and expenses pursuant to Rule 23(g) and ERISA, 29 U.S.C. §1132(g), in the amount of $549,161.37 to cover all plaintiffs' fees, costs, and expenses connected to this litigation from November 2009 through the 2016 effective date of the settlement. This amount was calculated by a "lodestar" method based on work done by class counsel from November 2009 through October 2, 2015 and for the work expected to be done after that, through the 2016 effective date of the settlement, at market rates ascertained with reference to fee awards in similar ERISA/LMRA retiree healthcare class actions, subject to a discount factor negotiated by the parties. Pfizer is to pay this amount in addition to the $750,000 settlement amount. In addition, the settlement and Settlement Agreement will bring resolution to the litigation, will eliminate further delay, uncertainty, and the risks to both sides of adverse result, and will provide a framework for addressing future disagreements over application of the "substantially similar and substantially equivalent" standards—if any disagreements arise—before additional litigation.

**Counsel's Assessment.**

**N.**     Class counsel and USW counsel concur that the settlement embodied in the Settlement Agreement is fair, reasonable, and beneficial to the class.

**O.**     Class counsel identified a number of factors that led to his conclusion that the settlement is fair, reasonable, and beneficial to the class. Class counsel considered the uncertainties and delay involved in continued litigation. He analyzed governing law, the CBAs, and other pertinent documents and evidence. While class counsel concluded that plaintiffs have a substantial case, he also recognized that continued litigation would be vigorously contested by defendants, that the final outcome of any litigation is uncertain, and that whatever the outcome, continued litigation would entail protracted uncertainties and additional delay in resolution of the parties' dispute. He recognized, too, that settlement would provide prompt and substantial and positive relief for class members.

**P.**     In addition, class counsel considered that the Settlement Agreement restores in substantial part the content and structure of the BC/BSM plan and puts into place a network of providers broader than that available under the UHC plan, two principal objectives of plaintiffs' lawsuit. He considered that the Settlement Agreement also provides for the $750,000 settlement payment, which will fully reimburse the higher 2010 premiums and partially reimburse the higher medical and prescription expenses incurred by class members, computed based on Pfizer data, subject to medical confidentiality safeguards approved by the Court, ECF No. 44, prorated among class members according to the parties' Plan of Allocation, ECF No. 51-6. He considered that in addition to the $750,000 payment to class members, the settlement will compensate class counsel and provide some reimbursement of litigation expenses incurred by USW on class members' behalf. He considered, too, that the settlement provides a framework for addressing

future disagreements over interpretation and application of the "substantially similar and substantially equivalent" standards, if any disagreements arise.

  **Q.**  Class counsel, too, considered that the law governing collectively-bargained retiree healthcare is evolving, and has generated recent legal controversies, and that this resolution ends uncertainty, avoids further delay and expense, and eliminates plaintiffs' risk of adverse result.

  **R.**  Based on these factors, in consultation with USW, healthcare experts, and the class representatives, class counsel, joined by USW counsel, concludes that the settlement and Settlement Agreement are fair, reasonable, and beneficial to the class.

  **S.**  Defense counsel concurs that the settlement is fair, reasonable, and adequate and represents a mutually beneficial positive resolution of the parties' dispute, bringing certainty, avoiding more delay and expense, eliminating the risk of adverse result, and providing valuable benefits to class members.

**Notice to the Class.**

  **T.**  The Court approved the class notice—titled "Important Notice About Pfizer Health Benefits For Former Warner-Lambert and Parke-Davis Employees" on November 13, 2015. *See* ECF Nos. 52, 53, & 51-3. A settlement administrator retained by Pfizer and approved by the Court sent the notice, revised to reflect the schedule set by the Court, by first-class mail to all class member family units at their last known addresses, with each notice accompanied by a summary of the 2014 Plan and an individual family unit statement of the recipient's anticipated allocation of the settlement amount.

  **U.**  The class notice summarized the lawsuit, identified the parties and the lawyers, defined the class, and summarized the parties' claims and defenses and the litigation history. The notice described the negotiations and mediation and summarized the settlement terms. The notice

outlined the parties' reasons for settlement, specified that the settlement entails compromise, and described the procedure for objecting to the settlement. The notice advised class members that the full Settlement Agreement was available by request to the settlement administrator. The notice advised class members that access to all court filings is available through PACER and from the district court clerk and invited class members to request additional information about the litigation, the settlement, and the procedure from class counsel by mail or telephone.

**The Approval Process.**

 **V.** Pursuant to the Court's order preliminarily approving the settlement, ECF Nos. 52 & 53, and the notice, the Court held a fairness hearing on February 22, 2016. No class member appeared at the hearing to present an objection. One class member submitted a written objection to the settlement. ECF No. 55. That objection was withdrawn. ECF No. 59.

 **W.** As discussed in more detail below, the Court concludes that the parties' settlement, concurred in by all parties and their counsel, and reached in the course of negotiations and mediation facilitated by a private mediator jointly selected by the parties, is the product of reasoned and informed "arm's length" negotiations which produced a mutually-beneficial settlement that eliminates uncertainties, avoids further delay and expense, eliminates each side's risk of adverse result, and is consistent with the public interest, and, in these circumstances, is fair, reasonable, and adequate under Rule 23(e)(2).

**CONCLUSIONS OF LAW**

 **1.** This Court has jurisdiction under LMRA Section 301, 29 U.S.C. §185, and ERISA, 29 U.S.C. §§1132(e)(1) and (f).

 **2.** Class certification is appropriate in ERISA/LMRA retiree healthcare cases which meet the Rule 23(a)(1)-(4) numerosity, commonality, typicality, and adequacy of representation

9

standards and one or more of the Rule 23(b) requirements. See *USW v. Kelsey-Hayes Co.*, 290 F.R.D. 77, 80-83 (E.D. Mich. 2013) (certifying class of approximately 400 retirees and their surviving spouses and other eligible dependents under Rule 23(a) and (b)(1) and (2) in an ERISA/LMRA action challenging company unilateral changes in retirement health insurance and company assertions of a unilateral "right to amend or terminate" retiree healthcare). The appointment of class representatives who "will fairly and adequately protect the interests of the class" is appropriate under Rule 23(a)(4). The appointment of class counsel requires consideration of counsel's work, experience, legal knowledge, resources, and other factors "pertinent to counsel's ability to fairly and adequately represent the interests of the class." Rule 23(g)(1)(A)(i)-(iv) and (B).

    **3.**    This class action satisfies the Rule 23(a)(1)-(4) numerosity, commonality, typicality, and adequacy standards. It affects approximately 400 class members, including plaintiffs Sims and Bailey, so that joinder of all class members is impracticable. There are questions of law and fact common to the class, including questions regarding the interpretation and application of the "substantially similar and substantially equivalent" standards set by the governing 1998 CBA. The claims of plaintiffs Sims and Bailey are typical of those of the class, and defendants' defenses apply to all class members. Plaintiffs Sims and Bailey, based on their backgrounds as employees, former local union officials, and participants in collective bargaining, ECF Nos. 51-10 & 51-11, and on their initiative and commitment demonstrated in bringing and prosecuting this action, and their dedication shown over the course of the litigation and in the negotiation and mediation processes, are qualified and well-suited to fairly and adequately protect the interests of the class and they have done so. *See USW v. Kelsey-Hayes Co.*, 290 F.R.D. at 81-82 (appointing as class representatives two retirees who evidenced "commitment to

pursue the common interests of the class members to enforce their collectively bargained retiree healthcare benefits," who were "former union officials" and "participated in collective bargaining," and who joined with their former union which was "likewise committed to prosecuting" the class action).

**4.**     The Court reviewed the declaration and resume of plaintiffs' counsel Stuart M. Israel. ECF No. 51-12. Based on his background and experience and conduct of this action, the Court finds that he satisfies Rule 23(g) standards and is qualified and well-suited to fairly and adequately represent the interests of the class and he has done so. *See USW v. Kelsey-Hayes Co.*, 290 F.R.D. at 82 (appointing Stuart M. Israel and his law firm as class counsel, finding Israel to be "qualified" and having "extensive experience handling other ERISA/LMRA retirement healthcare litigation").

**5.**     This class action satisfies the requirements of Rule 23(b)(1)(A) in that prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for defendants, in particular regarding the interpretation and application of the "substantially similar and substantially equivalent" standards set by the governing 1998 CBA.

**6.**     Accordingly, this class action is certified as defined in paragraph E of this order, plaintiffs Sims and Bailey are appointed as Rule 23(a)(4) class representatives, and plaintiffs' counsel Stuart M. Israel and his law firm are appointed as Rule 23(g) class counsel.

**The Legal Standards.**

**7.**     The law favors the settlement of class action litigation. See *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement

of class actions"); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions"); and *Steiner v. Fruehauf Corp.*, 121 F.R.D. 304, 305 (E.D. Mich. 1988), *aff'd sub nom Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("case law favors the voluntary settlement of class actions").

     **8.**     "The claims, issues, or defenses of a certified class may be settled...only with the court's approval." Rule 23(e).

     **9.**     To warrant district court approval, a class action settlement must be "fair, reasonable, and adequate." Rule 23(e)(2). See *General Motors*, 497 F.3d at 631 ("Before approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'"); *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citations omitted), *appeal dismissed* 391 F.3d 812 (6th Cir. 2004), *cert. denied* 544 U.S. 1049 (2005) ("In deciding whether to grant final approval of the Proposed Settlement, this Court must determine, after holding a fairness hearing, whether the settlement is 'fair, adequate, and reasonable'").

     **10.**     "The evaluation and approval of a class settlement is committed to the sound discretion of the district court." *IUE-CWA*, 238 F.R.D. at 594, citing, *inter alia*, *Clark Equip. Co. v. Allied Industrial Workers*, 803 F.2d 878, 880, *reh.* and *reh. en banc denied* (6th Cir. 1986) (*per curiam*), *cert. denied* 480 U.S. 934 (1987). The district court "should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'" *IUE-CWA*, 238 F.R.D. at 593.

     **11.**     The district court's "role in passing upon the propriety of a class action settlement is limited to a determination of whether the terms proposed are fair and reasonable to those affected." *Steiner*, 121 F.R.D. at 305, citing, *inter alia*, *Williams v. Vukovich*, 720 F.2d 909 (6th

Cir. 1983). The district court's evaluation of a class action settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip.*, 803 F.2d at 880 (citation omitted). Accord: *IUE-CWA*, 238 F.R.D. at 594.

12.    The district court is to assess a proposed settlement based on a "range of reasonableness" which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *IUE-CWA*, 238 F.R.D. at 594 (citations omitted). *See also Cardizem*, 218 F.R.D. at 523 (applying a "range of reasonableness" measure). The district court is to consider "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Id.* at 522 (citation omitted). In assessing a proposed settlement, the district court "should not substitute its judgment for that of the parties." *Steiner*, 121 F.R.D. at 306. See also *IUE-CWA*, 238 F.R.D. at 594 (citations and quotation marks omitted) (the court "must respect the parties' compromise" and "may not 'substitute his or her judgment for that of the litigants and their counsel'").

13.    Before conducting a fairness hearing, a district court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement. Rule 23(e)(1). The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *General Motors*, 497 F.3d at 629, citing, *inter alia*, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

13

**14.**     The Court finds that the class notice approved by the Court, as sent to all class member family units, satisfies Rule 23(e)(1) notice requirements. In particular, the notice set out the litigation history, explained the settlement, set out the objection procedure and deadline, provided class members the opportunities to obtain the complete Settlement Agreement from the settlement administrator and to obtain further information from class counsel and from the docket, and was accompanied by a summary of the 2014 Plan and each was accompanied by an individualized statement of the recipient's anticipated distribution from the settlement amount. *See General Motors*, 497 F.3d at 630 (upholding notice which "clearly explained its purpose, discussed the nature of the pending suit and proposed class and accurately summarized the 76-page settlement agreement and incorporated exhibits").

**15.**     The purpose of the fairness hearing is to provide "procedural safeguards" giving class members the opportunity to present objections on the record and giving the parties the opportunity to present "sufficient evidence to allow the district court to review the terms and legitimacy of the settlement." *General Motors*, 497 F.3d at 635. "In satisfying these requirements, a district court has wide latitude." *Id*. The district court may "limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Id*. (citations omitted). The fairness hearing need not "entail the entire panoply of protections afforded by a full-blown trial on the merits." Rather, the district court has "the discretion to limit the fairness hearing" to whatever is "consistent with the ultimate goal of determining whether the proposed settlement is fair, adequate and reasonable." *Tennessee Ass'n of HMOs, Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001).

**16.**     The Sixth Circuit identified "factors" that may "guide the inquiry" undertaken by the district court: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely

duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *General Motors*, 497 F.3d at 631, citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983). See also *IUE-CWA*, 238 F.R.D. at 594; *Cardizem*, 218 F.R.D. at 522; and *Steiner*, 121 F.R.D. at 305-306. The district court may choose to "consider only those factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA*, 238 F.R.D. at 594-595, citing, *inter alia*, *Granada*, 962 F.2d at 1205-1206. Here, as detailed below, considering the pertinent factors, the Court concludes settlement is fair, reasonable, and adequate under Rule 23(e)(2).

**Assessing the Dispute and Weighing Continued Litigation Against Settlement.**

**17.**     The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *General Motors*, 497 F.3d at 631. In assessing the parties' legal dispute, the district court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id.* at 632. *General Motors* found a legitimate dispute over whether "collective-bargaining agreements vest former union workers with their healthcare benefits upon retirement." *Id.* at 631.

**18.**     Here, consideration of this factor leads to the conclusion that there is indeed a legitimate dispute and that resolution of this lawsuit by settlement provides a positive alternative to continued litigation.

**19.**     Here, as noted, at the core of the parties' disagreement is their dispute over the interpretation and application of the "substantially similar and substantially equivalent" standards set by the 1998 CBA. The parties' views on this question differ fundamentally. Resolution of these fundamental questions would involve adjudication of sharply-contested disagreements. ERISA/LMRA retiree healthcare actions often require extensive, expensive, labor-intensive litigation and can turn on express CBA terms, implied CBA terms, "extrinsic" evidence like bargaining history, and admissions reflected in the parties' "course of conduct." They also can entail extensive inquiry into the nuances of complex health insurance plans and their application to and impact on retirees' anticipated future healthcare needs, typically requiring assessment of differing expert opinions. In addition, the law governing collectively-bargained retiree healthcare has uncertainties and has been evolving, in particular since the U.S. Supreme Court decided *M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926 (2015), addressing retiree healthcare law in the Sixth Circuit.

**20.**     Here, the Court finds that the parties' dispute is genuine, serious, and substantial, that continued litigation would entail considerable effort and expense, that the outcome is uncertain for each side, and that, in particular, class members would bear the risk that continued litigation would leave them with an adverse result. These circumstances, the Court finds, favor the settlement that ends litigation risk, eliminates uncertainties, and is beneficial to each side and to the class. Accordingly, the Court concludes that the settlement is informed, prudent, and rational, within an appropriate "range of reasonableness," and fair, reasonable, and adequate under Rule 23(e)(2).

**The Risk/Delay/Expense Factor.**

21.     Whatever the relative merits of the parties' legal positions, resolution of ERISA/LMRA retiree healthcare disputes is rarely expeditious, much less risk-free or inexpensive. The court in *IUE-CWA*, 238 F.R.D. at 596, noted the protracted litigation in two retirement healthcare cases: *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998), (*en banc*), *cert. denied* 524 U.S. 923 (1998), which after nine years of litigation upheld the employer's right to modify salaried retirees' benefits, and *Bittinger v. Tecumseh Products*, 201 F.3d 440 (6th Cir. 1999), which after eight years of litigation affirmed the employer's right to modify retiree health benefits. The *Tackett* retiree healthcare action began in 2007, resulted in a Supreme Court decision, three Sixth Circuit decisions, multiple district court decisions and a trial, and now has been remanded for further district court action. *See M&G Polymers USA, LLC v. Tackett*, 2016 WL 240414 (6th Cir. 01/21/16), on remand from the Supreme Court, in turn remanding to the district court. *See also UAW v. General Motors*, 2006 WL 891151 at *17 (E.D. Mich.) ("The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement"), *consol. and aff'd. UAW v. General Motors*, 497 F.3d 615 (6th Cir. 2007), and *In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002) (internal quotation marks and citations omitted) ("the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court….The prospect of such a massive undertaking clearly counsels in favor of settlement.").

22.     In addition, in retiree benefits litigation, delay at the least diminishes the value of possible victory at some distant point in the future. Here, there is an aging class, and some members might not benefit at all from a victory that comes only after more years of litigation. And, again, absent settlement, all class members would be subject to the uncertainties, hardship,

and delay attendant to continued litigation. The "risk/delay/expense" factor, too, warrants approval of the settlement.

**The Judgment of Legal Counsel.**

23.    The judgment of the parties' legal counsel that the settlement is in the interest of the settling parties "is entitled to significant weight, and supports the fairness of the class settlement." *IUE-CWA*, 238 F.R.D. at 597 (citations omitted). *See also Cardizem*, 218 F.R.D. at 525 ("In approving a proposed settlement, the Court also considers the opinion of experienced counsel as to the merits of the settlement."). Here, as discussed, all parties' counsel and the class representatives share the view that the settlement is fair, reasonable, and beneficial to class members.

24.    The Court is familiar with counsel for both sides from their efforts in this litigation, which reflected "arm's length" disagreements but also an informed, reasoned, practical, and productive approach. The Court recognizes their experience and diligence and concludes that their endorsement of the settlement "is entitled to significant weight." *IUE-CWA*, 238 F.R.D. at 597. Their assessment that the settlement is fair, reasonable, and adequate is well-supported and consistent with the Court's views. *See IUE-CWA*, 238 F.R.D. at 597 ("[T]he Court must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" (citations omitted)). This factor, too, supports approval of the settlement.

**The Discovery/Evidence Factor.**

25.    The parties exchanged information, data, and collected the governing CBAs and other evidence relevant to their dispute. In addition, the two sides enlisted healthcare specialists to assist them and each engaged a testifying expert, and the parties exchanged expert reports. At

negotiations and mediation, counsel report that the parties had frank discussions, sometime heated, revealing deep divides. Working together, however, with the help of the mediator, the parties shared pertinent information, while preserving medical confidentiality, directly and through each side's healthcare specialists, and bridged the divides. The Court finds that through discovery and information exchange the parties developed and considered a body of information sufficient to permit their, and the Court's, informed assessment of the litigation and the settlement. The Court finds that the parties and the Court have sufficient information to conclude that the settlement is a fair, reasonable, and adequate resolution of the parties' dispute. The discovery/evidence factor, too, warrants approval of the settlement.

**The Fairness Factor.**

    **26.**    District courts scrutinize settlements to ensure that absent class members have not "lost out in favor of attorneys and named class members." *IUE-CWA*, 238 F.R.D. at 598 (citations omitted). There is nothing in the parties' Settlement Agreement that improperly benefits attorneys or that favors the class representatives over other class members. To the contrary, the Court finds that the settlement is even-handed in its treatment of all class members, that it does not give special consideration to the class representatives, and that it reasonably provides for Pfizer payment of class counsel's fees, costs, and expenses without diminishing the value of the settlement payment to the class members. The Court finds that the fees appropriately were computed on work hours and estimated future work hours through the conclusion of the litigation, on a "lodestar" basis, at rates consistent with fee awards to class counsel Israel and others in other ERISA/LMRA retirement healthcare class actions in the Eastern District of Michigan. *See, e.g.*, *Hargrove v. EaglePicher Corp.*, 2012 WL 1668152 (E.D. Mich.). The Court finds that the fees were subjected to a discount factor and the computation excluded the

considerable and useful work performed by USW staff counsel, and that fee negotiations occurred after the central terms of the settlement were set, further demonstrating that they are reasonable and appropriate under the standards set by ERISA and Rule 23(h). The Court finds, too, that the fees were the subject of appropriate notice to the class. The fairness factor, too, favors approval of the settlement.

**The "Arm's Length" Factor.**

**27.**   "Courts presume the absence of fraud or collusion [in class action settlements] unless there is evidence to the contrary." *IUE-CWA*, 238 F.R.D. at 598 (citations omitted). Here, there is no suggestion of fraud or collusion. Indeed, since this litigation began in 2009, the parties and their counsel have displayed civil but vigorous disagreement over core questions as well as over other issues in dispute in the litigation. The parties jointly selected a neutral mediator to facilitate their settlement discussions and counsel regularly reported to the Court on their efforts. As in *IUE-CWA*, the Court concludes that the "process was entirely at arm's length, with each party representing and pursuing its own interests, and exercising independent judgment." 238 F.R.D. at 599. The arm's length factor also supports approval of the settlement.

**The Public Interest Factor.**

**28.**   The Court finds that the settlement is in the public interest. The settlement benefits the parties and simultaneously serves the public interest by achieving certainty for retirees and for Pfizer. It also serves the public interest in judicial economy and in resolving disputes in federal courts with expediency and efficiency to the extent possible in labor-intensive and often time-consuming ERISA/LMRA retirement healthcare actions. See *Cardizem*, 218 F.R.D. at 530 (citations omitted) ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and

unpredictable' and settlement conserves judicial resources"). The public interest factor, too, favors approval of the settlement.

**The One Objection.**

29.     The settlement administrator provided the required CAFA notice to the U.S. Attorney General, the U.S. Department of Labor, and the attorneys general of the 16 states in which class members now reside. None of these government entities objected to the proposed settlement.

30.     As directed by the Court, the notice was distributed to class members by the settlement administrator and described the process for submitting objections to the proposed settlement. One class member—Joan J. Gawron—submitted an objection to the proposed settlement. ECF No. 55. Plaintiffs responded in detail. ECF No. 56. Ms. Gawron's opposition is grounded mainly on misunderstanding of the proposed settlement. First, she expresses dissatisfaction about "co-pays" and "deductibles" which were features of the 2010-2013 UHC plan, and not of the settlement plan. In fact, the settlement plan substantially duplicates the pre-2010 plan and, coordinated with Medicare, provides full payment for most covered medical services, with no co-pays or deductibles from retirees. Second, Ms. Gawron objects that the settlement plan gives her "no idea what my prescription will cost." It appears that Ms. Gawron's dissatisfaction stems from the 2010-2013 UHC plan's percentage-based prescription co-pays, which varied in amount and required retiree co-pays of as much as $100 per-prescription. The UHC plan was replaced on January 1, 2014 and, as noted, under the settlement plan, retirees pay nothing for drugs manufactured by Pfizer (or Wyeth, King, Greenstone, or any other Pfizer affiliate). For non-Pfizer drugs, retirees pay up to $15 for a 30-day supply and up to $30 for a 90-day supply of maintenance medication. This coverage eliminates percentage-based prescription

co-pays, caps retiree's per-prescription costs, and allows retirees to predict their prescription costs. In addition, retirees are able to limit, or eliminate altogether, medication costs by electing Pfizer drugs where possible. Third, Ms. Gawron expresses dissatisfaction with her settlement allocation. In fact, the allocation fully reimburses Ms. Gawron for her higher 2010 premium payments and is entirely consistent with the Plan of Allocation, which the Court finds fair and reasonable.

**31.**   Ms. Gawron's opposition would not alter the conclusion that the proposed settlement is fair and reasonable, and a desirable alternative to the delay, cost, uncertainty, and risk to the parties of continued litigation.

**32.**   On February 11, 2016, after discussion with plaintiffs' counsel, Ms. Gawron withdrew her objection. ECF No. 59.

## CONCLUSION

**33.**   The Court finds that the Settlement Agreement resolves a genuine and serious legal dispute between the class members and USW on the one hand, and defendants on the other hand; that it is the product of informed "arm's length" negotiations and mediation; that it achieves a mutually-beneficial settlement, fairly and without any suggestion of fraud and collusion; that it binds defendants, adding to the class members' security; that it eliminates litigation risks and uncertainties for all sides; that it avoids further delay, expense, and hardship; that it serves the interests of the class as a whole, and presents a reasonable alternative to continued litigation; that it is consistent with 29 U.S.C. §186(c)(2) and 28 U.S.C. §1711 *et seq.*; that it conserves judicial resources and is consistent with the public interest; that it has the parties' and counsel endorsements; that it is within an acceptable "range of reasonableness"; and,

finally, considering all the circumstances, that it is fair, reasonable, and adequate under Rule 23(e)(2).

For the foregoing reasons, and those in the record and stated at the fairness hearing, it is **ORDERED** that the parties' motion for approval of the class action settlement, ECF No. 57, is **GRANTED**.

It is further **ORDERED** that the parties' settlement and the class Settlement Agreement, ECF No. 51-2, is **APPROVED** in all respects and as to all parties.

It is further **ORDERED** that this class action is **CERTIFIED** as defined in paragraph E of this order.

It is further **ORDERED** that plaintiffs Sims and Bailey are **APPOINTED** as Rule 23(a)(4) class representatives.

It is further **ORDERED** that plaintiffs' counsel Stuart M. Israel and his law firm are **APPOINTED** as Rule 23(g) class counsel.

This is a final order and closes the case.


Dated: February 24, 2016                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge


| PROOF OF SERVICE |
| :-- |
| The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 24, 2016. |
| s/Michael A. Sian |
| MICHAEL A. SIAN, Case Manager |